IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-280

| | |
|---|---|
| BSI SOLUTIONS, INC., <br>                Plaintiff, <br><br> vs. <br><br> TWIN CITY FIRE INSURANCE COMPANY and NUTMEG INSURANCE AGENCY, INC. <br><br>                Defendants. | **COMPLAINT** |

Plaintiff complaining of Defendants jointly and severally alleges and says:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff BSI Solutions, Inc. ("BSI") is a corporation organized and existing under the laws of North Carolina, with its principal place of business in Mecklenburg County, North Carolina.

2. Upon information and belief, Defendant Twin City Fire Insurance Company ("Twin City") is an insurance company domiciled in the State of Indiana and duly licensed and authorized to transact insurance business in the State of North Carolina.

3. Upon information and belief, Defendant Nutmeg Insurance Agency, Inc. ("Nutmeg") is a Connecticut company licensed and authorized to transact insurance business in the State of North Carolina.

4. Upon information and belief, Defendants regularly issue insurance policies and engage in insurance business and transactions in Guilford County, North Carolina.

5. Jurisdiction and venue are otherwise properly held with this Honorable Court pursuant to

- 1 -

28 U.S.C. § 1332 and 28 U.S.C. § 1391(b) and (d).

## FACTUAL ALLEGATIONS

6. BSI provides, among other things, staffing services to commercial enterprises in North Carolina.

7. Beginning in approximately 2019, Defendants serviced BSI's insurance needs by brokering and providing coverage under an insurance policy titled Business Owner's Policy and more specifically identifiable by policy number 76SBWBH2893 (and starting on April 8, 2023 under policy number 76SBWBI6481) (hereinafter the "Policy").

8. At all times relevant, Defendant Nutmeg served as the agent and/or broker for the Policy.

9. At all times relevant, Defendant Twin City was the insurer under the Policy.

10. At all times relevant, Plaintiff timely paid all premiums due for coverages under the Policy.

11. At all times relevant, Plaintiff cooperated with Defendants regarding the Policy.

12. At all times relevant, Plaintiff complied with the terms and conditions of the Policy.

13. In the spring of 2022, Plaintiff began negotiations with Enterprise Leasing Company – Southeast, LLC (hereinafter "Enterprise") to provide certain services related to Enterprise's rental of automobiles at the airport in Charlotte, North Carolina.

14. Concurrent with the negotiations between Plaintiff and Enterprise described above, on or about May 31, 2022, Plaintiff, acting through its owner and president Dr. Kendrick Carroll, contacted Defendants by phone about securing additional coverage related to Plaintiff's expected services and operations for Enterprise including coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

15. Plaintiff specifically requested that Defendants secure and provide coverage for damage to vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

- 2 -

16. During the May 31, 2022 phone call, Defendants represented to Plaintiff, and reassured Plaintiff, that the Policy would provide coverage for damage to vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

17. On or about June 14, 2022, Plaintiff entered into a contract with Enterprise to provide staffing for Enterprise at the Charlotte airport (hereinafter "Enterprise Contract").

18. The Enterprise Contract required that Plaintiff provide coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

19. Defendants knew or should have known that the Enterprise Contract required that Plaintiff provide coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

20. On or about June 9, 2022, Defendants provided Plaintiff and Enterprise with a Certificate of Liability Insurance, naming Enterprise as the Certificate Holder, for coverage under the Policy.

21. When entering into the Enterprise Contract, Plaintiff relied upon the representation of Defendants that the Policy would provide coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

22. Starting in approximately February 2023, Plaintiff and/or Enterprise submitted claims to Defendant Twin City for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees (the "Claims").

23. After initially concluding that the Policy did not provide coverage for the Claims, on or about March 9, 2023, Defendants undertook steps to reform the Policy to ensure that the Policy provided coverage for the Claims.

24. Upon information and belief, the steps taken by Defendants to reform the Policy were

undertaken in recognition of Defendant's prior agreement to ensure that Plaintiff was covered for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

25. On or about March 10, 2023, the Policy was reformed with effective date of June 1, 2022 to include coverage called "Hired Auto Physical Damage Coverage."

26. On or about March 10, 2023, one or both Defendants provided notice to Plaintiff that the Policy had been retroactively changed to add the property damage coverage identified as "Hired Auto Physical Damage Coverage."

27. The Policy, including the coverage provided by the reformation of the Policy on or about March 10, 2023 with the addition of "Hired Auto Physical Damage" endorsement, provided coverage for the Claims and coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees

28. To the extent that the coverages under the Policy, including the coverage provided by the reformation of the Policy on or about March 10, 2023 with the addition of "Hired Auto Physical Damage" endorsement, do not provide coverage for the Claims and coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees, Defendants should have ensured that the reformation of the Policy described above provided coverage for the Claims and coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees and/or Defendants should have procured the coverage requested by Plaintiff including coverage for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

29. On or about March 13, 2023, Defendants provided Plaintiff and Enterprise with a Certificate of Liability Insurance naming Enterprise as the Certificate Holder, and further

indicating that Plaintiff was insured for automobile liability for "Hired Care Physical Damage" (also known as "Hired Auto Physical Damage") with such coverage retroactive to April 6, 2022.

30. On or about March 31, 2023, Defendant Twin City notified Plaintiff that Defendant Twin City was denying coverage for the Claims.

31. Upon information and belief, on or about March 31, 2023, one or more Defendants notified Enterprise that Defendant Twin City was not providing coverage for the Claims and further notified Enterprise that there was no coverage under the Policy for damage to vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

32. The notification provided by Defendants to Enterprise, and described above, was done without the permission or consent of Plaintiff.

33. The notification provided by Defendants to Enterprise, as described above, was improper, hasty, reckless, without any justification.

34. The notification provided by Defendants to Enterprise, as described above, was a violation of Defendants' duties to act reasonably in light of the best interests of its insured, the Plaintiff.

35. On March 31, 2023, an agent and/or employee of Defendants named Cassandra Safford telephoned an agent and/or employee of Enterprise.

36. During this March 31, 2023 phone call, Ms. Safford made numerous statements about Plaintiff.

37. During this March 31, 2023 phone call, Ms. Safford told Enterprise that Plaintiff was not forthcoming about its business and why it needed insurance.

38. During this March 31, 2023 phone call, Ms. Safford told Enterprise that Plaintiff did not

- 5 -

Case 1:24-cv-00280-LCB-LPA   Document 1   Filed 03/28/24   Page 5 of 18

disclose that Plaintiff's employees would be driving Enterprise vehicles.

39. During this March 31, 2023 phone call, Ms. Safford told Enterprise that Plaintiff claimed it needed insurance so that Plaintiff's employees could rent vehicles.

40. During this March 31, 2023 phone call, Ms. Safford told Enterprise that Plaintiff "weren't [sic] honest about anything they were doing."

41. During this March 31, 2023 phone call, Ms. Safford told Enterprise that Plaintiff was "outright not honest with us."

42. During this March 31, 2023 phone call, Ms. Safford told Enterprise that Plaintiff made misrepresentations to Defendants.

43. The statements made during the March 31, 2023 phone call by Ms. Safford to Enterprise were made intentionally.

44. The statements made during the March 31, 2023 phone call by Ms. Safford to Enterprise were false.

45. The statements made during the March 31, 2023 phone call by Ms. Safford were defamatory.

46. The statements made during the March 31, 2023 phone call by Ms. Safford were made within the scope and course of her employment with one or more Defendants.

47. Upon information and belief, prior to making the statements during the March 31, 2023 phone call to Enterprise, Ms. Safford failed to reasonably investigate the factual basis for her statements.

48. The statements made during telephone call by Ms. Safford to Enterprise as described above were improper, hasty, reckless, without any justification.

49. The statements made during telephone call by Ms. Safford to Enterprise as described above

were malicious, wanton, and in reckless indifference to the truth and Plaintiff's rights.

50. Defendants knew or should have known that the statements made during the March 31, 2023 phone call by Ms. Safford would have an adverse impact on Plaintiff's business activities including Plaintiff's business relationship with Enterprise.

51. The telephone call by Ms. Safford to Enterprise as described above was a violation of Defendants' duties to act reasonably in light of the best interests of its insured, the Plaintiff.

52. Upon, and as a direct and proximate result of, being informed that Defendant Twin City was not providing coverage for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees, and/or as a further result of the defamatory statements made by Ms. Safford during the above-described March 31, 2023 phone call, Enterprise terminated the Enterprise Contract on April 6, 2023.

53. Defendants knew or should have known that Enterprise would terminate the Enterprise Contract if Defendants denied coverage for the Claims and/or engaged in the conduct described above.

54. Defendants knew or should have known that Enterprise would terminate the Enterprise Contract if Defendants notified Enterprise that Defendant Twin City was not providing coverage for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees and/or engaged in the conduct described above.

55. Had Defendants not improperly, recklessly, hastily, and without justification notified Enterprise that Defendant Twin City was not providing coverage for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged

while being driven by Plaintiff's employees and/or engaged in the conduct described above, Enterprise would not have terminated the Enterprise Contract.

56. Through April and May of 2023, Defendants continued to evaluate whether the Claims should be covered by Defendant Twin City.

57. On or about April 4, 2023, Defendants added an endorsement to the Policy called "Garagekeepers Coverage." After adding this endorsement, Defendants removed this endorsement.

58. Upon information and belief, had the "Garagekeepers Coverage" endorsement been added to the Policy on April 4, 2023 and had Defendants confirmed to Enterprise that this endorsement provided coverage for the Claims and that there was coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees, and/or had Defendants not defamed Plaintiff, Enterprise would not have terminated the Enterprise Contract.

59. During April and May 2023, Defendants had, upon information and belief, concluded that Defendants had incorrectly denied the Claims based on a further review of the May 31, 2022 phone call from Kendrick Carroll discussed above.

60. Upon reaching the conclusion that Defendants had incorrectly denied the Claims, Defendants again undertook the process to reform the Policy to ensure that the Policy provided coverage for the Claims.

61. On or about May 31, 2023, the Policy was again reformed to include the "Garagekeepers Coverage" endorsement that was previously added to, and removed from, the Policy on April 4, 2023.

62. Upon the reformation of the Policy to include the "Garagekeepers Coverage," Defendants

reversed the previous denial(s) of the Claims.

63. On or about May 31, 2023, one or more Defendants notified Plaintiff for the first time that Defendants had now concluded that there was coverage under the Policy for the Claims.

64. Defendants should never have denied the Claims, and Defendants should never have notified Enterprise that there was not coverage under the Policy for the Claims.

65. As a direct and proximate result of Defendants' improper, reckless, hasty, defamatory, and unjustified conduct and the consequential termination of the Enterprise Contract, Plaintiff has suffered damages including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00 and is entitled to recover of Defendants for such damages plus interest.

## FIRST CLAIM FOR RELIEF – NEGLIGENCE

66. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

67. At all relevant times, Defendants had a duty to procure the coverage requested by Plaintiff.

68. At all times relevant, Defendants had a duty to not misrepresent to Enterprise the coverage under the Policy, including a duty to not misrepresent that there was no coverage under the Policy for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

69. At all relevant times, Defendants had a duty to exercise reasonable care in the handling of the Claims.

70. Defendants had a duty to act reasonably in light of the best interests of its insured, the Plaintiff.

71. To the extent that there was no coverage under the Policy, including endorsements added to the Policy, for the Claims, one or more Defendants, acting through themselves and/or their agents, negligently, recklessly, and improperly failed to procure the coverage requested by Plaintiff.

72. To the extent the Policy did not provide coverage for the Claims, Defendants, acting through themselves and/or their agents, negligently, recklessly, and improperly failed to timely reform the Policy to provide coverage for the Claims.

73. Defendants, acting through themselves and/or their agents, negligently, recklessly, and improperly notified Enterprise that Defendant Twin City was not providing coverage for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

74. Defendants, acting through themselves and/or their agents, negligently, recklessly, and improperly informed Enterprise that Plaintiff was not forthcoming about its business and why it needed insurance; that Plaintiff did not disclose that Plaintiff's employees would be driving Enterprise vehicles; that Plaintiff claimed it needed insurance so that Plaintiff's employees could rent vehicles; that Plaintiff "weren't [sic] honest about anything they were doing;" that Plaintiff was "outright not honest with us"; and that Plaintiff made misrepresentations to Defendants.

75. Defendants, acting through themselves and/or their agents, negligently, recklessly, hastily, and improperly evaluated, handled, and denied the Claims as set forth above and as may be further revealed during discovery in this matter.

76. Upon, and as a direct and proximate result of, Defendants' negligent and reckless acts as described above, Enterprise terminated the Enterprise Contract on April 6, 2023.

77. Defendants knew or should have known that Enterprise would terminate the Enterprise Contract if Defendants acted as described above including, but not limited to, notifying Enterprise that Defendant Twin City was not providing coverage for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees.

78. As a direct and proximate result of Defendants' breach of the above duties and, therefore, negligence, Plaintiff has suffered damages including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00 and is entitled to recover of Defendants for such damages plus interest.

## SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT
## AGAINST DEFENDANT TWIN CITY

79. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

80. Pursuant to the terms of the Policy, Defendant Twin City was obligated to timely pay the Claims.

81. Plaintiff provided sufficient information for Defendant Twin City to make timely payment for the Claims.

82. Plaintiff cooperated with Defendant Twin City and Plaintiff complied with all of Plaintiff's obligations under the Policy.

83. Defendant Twin City wrongfully denied the Claims and failed to make timely payment on the Claims despite having sufficient documentation to properly evaluate and make payment on the Claims.

84. Defendant Twin City had a duty of good faith and fair dealing with respect to Plaintiff, the Claims, and the Policy.

85. By wrongfully denying the Claims, wrongfully interpreting the Policy, wrongfully failing to procure coverage requested for the Policy, and/or wrongfully notifying Enterprise that Defendant Twin City was not providing coverage for the Claims and/or that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees, and by otherwise acting or failing to act as described above, Defendant Twin City breached its contractual duty of good faith and fair dealing.

86. Defendant Twin City breached various contractual duties owed to Plaintiff, expressed and implied by operation of law and by usage of trade, including but not limited to duties to:

   a) Make prompt payment on the Claims;

   b) Perform a prompt and proper investigation and evaluation of the Claims and the coverages under the Policy;

   c) Not misrepresent the applicability of the Policy to the Claims;

   d) Not deny the Claims;

   e) Not notify Enterprise that the Claims were not covered under the Policy;

   f) Not defame and/or slander Plaintiff to Enterprise;

   g) Not notify Enterprise that there was no coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees;

   h) To deal fairly and in good faith with Plaintiff regarding the Claims;

   i) Fairly and accurately construe obligations and duties regarding the Claims;

   j) Comply in all respects with North Carolina's laws on claims handling, including, but not limited to N.C. Gen. Stat. § 58-63-15; and

k) Act in other ways not specifically stated herein but as may be revealed during discovery in this matter.

87. Defendant's conduct as described above, including but not limited to the denial of the Claims and failure to make prompt and timely payment on the Claims, and notification to Enterprise, was unjustified.

88. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00 and is entitled to recover of Defendants for such damages plus interest.

**THIRD CLAIM FOR RELIEF – CHAPTER 75 CLAIMS FOR UNFAIR AND DECEPTIVE TRADE PRACTICES**

89. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

90. Defendants are engaged in the business of insurance in the State of North Carolina.

91. The business of insurance qualifies as "in or affecting commerce."

92. Defendants had a duty to act in good faith when handling the Claims under the Policy.

93. Defendants had a duty to not misrepresent pertinent facts or insurance policy provisions relating to coverages under the Policy pursuant to N.C. Gen. Stat. § 58-63-15(11)(a).

94. Defendants had a duty to acknowledge and act reasonably promptly upon communications with respect to the Claims pursuant to N.C. Gen. Stat. § 58-63-15(11)(b).

95. Defendants had a duty to adopt and implement reasonable standards for the prompt investigation of the Claims pursuant to N.C. Gen. Stat. § 58-63-15(11)(c).

96. Defendants had a duty to promptly pay the Claims pursuant to N.C. Gen. Stat. § 58-63-

15(11)(d).

97. Defendants had a duty to promptly affirm the Claims pursuant to N.C. Gen. Stat. § 58-63-15(11)(e).

98. Defendants had a duty to act in good faith to effectuate a prompt resolution of the Claims pursuant to N.C. Gen. Stat. § 58-63-15(11)(f).

99. By acting or failing to act as described above, Defendants breached the foregoing duties in the course of its handling of the Claims and such breaches constitute violations of Chapter 75 of the North Carolina General Statutes including N.C. Gen. Stat. § 75-1.1.

100. Defendants' defamatory and slanderous statements as described above were made in a business setting and constitute an unfair and deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1.

101. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00 and is entitled to recover of Defendants for such damages plus interest. Plaintiff is also entitled to recover treble damages pursuant to N.C. Gen. Stat. § 75-16, and the costs of this litigation including reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 plus interest.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

102. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

103. Defendants owed Plaintiff, as its insured, a duty of good faith and fair dealing at all times during the existence of the Policy.

104. By acting or failing to act as described above, Defendants purposefully, in bad faith, and without regard to the rights of the Plaintiff, mishandled the Claims, failed to timely pay the Claims, wrongfully denied the Claims, wrongfully failed to procure requested coverage, wrongfully notified Enterprise that the Claims were not covered under the Policy, defamed Plaintiff, and wrongfully notified Enterprise that Plaintiff did not secure coverage under the Policy for vehicles owned by Enterprise and damaged while being driven by Plaintiff's employees. Defendants' actions were reckless, unreasonable, and unfounded.

105. Defendants breached the covenant of good faith and fair dealing through the aforementioned conduct and as described above.

106. As a direct and proximate cause Defendants' breach of the obligation of good faith and fair dealing, Plaintiff has suffered damages including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00 and is entitled to recover of Defendants for such damages plus interest.

**FIFTH CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH CONTRACT**

107. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

108. A valid contract existed between Plaintiff and Enterprise and such contract conferred rights and benefits to Plaintiff.

109. At all times relevant, Defendants were aware of the Enterprise Contract.

110. By acting as described above including, but not limited to, contacting Enterprise and wrongfully informing Enterprise that the Claims were denied and/or that Plaintiff failed to maintain insurance coverage for vehicles owned by Enterprise and damaged while being

driven by Plaintiff's employees, and by further defaming Plaintiff, Defendants knowingly and intentionally induced Enterprise to terminate the Enterprise Contract.

111. Defendants had no reason to contact Enterprise and such contact was unjustified, hasty, reckless, intentional, and for no legitimate purpose.

112. The termination of the Enterprise Contract by Enterprise was a foreseeable result of Defendants' conduct.

113. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00 and is entitled to recover of Defendants for such damages plus interest.

**SIXTH CLAIM FOR RELIEF – DEFAMATION, SLANDER, AND SLANDER *PER SE***

114. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

115. Defendants, acting by and through their employee and/or agent Cassandra Safford, made numerous false and defamatory statements to Enterprise as described above.

116. The statements were made with the expectation that the statements would damage Plaintiff and Plaintiff's business activities and Plaintiff's business reputation.

117. Plaintiff and Plaintiff's business activities and reputation have been damaged by the statements in various ways including, but not limited to, the termination of the Enterprise Contract as well as other damages to the Plaintiff's business reputation and resulting loss of business opportunity.

118. Defendants' conduct constitutes slander and/or slander per se and Plaintiff is entitled to

recover from Defendants damages as alleged above and more fully herein including, but not limited to, the past and future lost net profits expected under the Enterprise Contract and damage to the business reputation of Plaintiff, in an amount in excess of $75,000.00.

## SEVENTH CLAIM FOR RELIEF – PUNITIVE DAMAGES

119. Plaintiff realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs of this Complaint.

120. The acts alleged herein were willful, wanton, or intentionally wrongful, such that punitive damages should be imposed against Defendants under N.C. Gen. Stat. § 1D-1 *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays unto the Court for joint and several relief against Defendants as follows:

1. That the Plaintiff have and recover judgment against Defendants for compensatory damages plus pre-judgment and post-judgment interest as allowed by law in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars;

2. That Defendants' conduct be declared by the Court, or to the extent necessary found by the jury, to be in violation of N.C. Gen. Stat. § 75-1.1 and that the actual damages awarded to Plaintiff be trebled pursuant to N.C. Gen. Stat. § 75-16;

3. That the Court order Defendants to pay such punitive damages as the trier of fact may determine are necessary to punish Defendants for its conduct and to deter Defendants and others from similar conduct in the future;

4. That the costs of this action be taxed against Defendants, including an award of attorney's fees to Plaintiff's counsel, pursuant to N.C. Gen. Stat. § 75-16.1, or other applicable law;

5. A trial by jury on all issues so triable; and

6.      For such other and further relief as the Court deems just and proper.

This the 28th day of March, 2024.

/s/ J. Michael Malone
J. Michael Malone (N.C. Bar No. 26512)
Hendren Redwine & Malone, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone (919) 573-1423
Facsimile (919) 420-0475
Email: mmalone@hendrenmalone.com